KERR CENTER PARENTS ASSOCIA-
TION; Jasen Richardson, by and
through his parent Candace Richardson;
Matthew Hasek, by and through his le-
gal guardian Barbara Hasek; Joseph
Barrett, By and Through his parent
Robert Barrett; Plaintiffs,

v.

Donald CHARLES; Karen Roach; Verne
Duncan; the Lake Oswego School Dis-
trict; the Children's Services Division;
and the Oregon Department of Educa-
tion; Defendants.

Donald CHARLES, the Lake Oswego
School District, and Nancy G. Klinger,
Third Party Plaintiffs,

v.

CENTENNIAL # 28J, Portland # 1J,
Beaverton # 48J, Bend # 31, Spring-
field # 19, Eugene # 4J, Pine Eagle
# 61, Canby # 86C, Greater Albany
# 8J, Missoula County High School,
Karen Roach, the Children's Services
Division, Verne Duncan, Oregon Depart-
ment of Education, Leo T. Hegstrom,
and the Department of Human Re-
sources, Third Party Defendants.

Civ. No. 82–1123FR.

United States District Court,
D. Oregon.

Sept. 6, 1983.

Steve Brischetto, Oregon Developmental Disabilities Advocacy Center, Portland, Or., for plaintiffs.

Chris Mullmann, James L. Dumas Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland, Or., for Lake Oswego School Dist.

Dave Frohnmayer, Atty. Gen., Robert Muir, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for Children's Services Div. and Dept. of Educ.

Graham Hicks, Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for Portland # 1J and Beaverton # 48J.

Robert Dressler, Portland, Or., for Centennial School Dist. # 28J.

## OPINION AND ORDER

FRYE, District Judge:

The matters before the court are plaintiffs' motions for summary judgment against defendants; third party plaintiffs' (defendants Donald Charles and Lake Oswego School District) motions for summary judgment against third party defendants (defendants Karen Roach, Verne Duncan, the Children's Services Division, and the Oregon Department of Education); defendant and third party plaintiff Lake Oswego School District and Donald Charles' motions for summary judgment against third party defendants (resident school districts) Centennial # 28J, Beaverton # 48J, Springfield # 19, Portland # 1J, Bend # 31, Eugene # 4J; and Centennial # 28J's motion for summary judgment against Donald Charles, Lake Oswego School District.

## JURISDICTION

This court has jurisdiction under the federal Education for All Handicapped Children Act, Pub.L. No. 94–142 (codified at 20 U.S.C. § 1401, et seq.) (hereafter EAHCA).

## PARTIES AND DEFINITIONS

Defendant Oregon Department of Education is an Oregon State agency duly organized pursuant to ORS 326.111 and responsible for exercising administrative functions of the State of Oregon relating to supervision, management and control of the Oregon public school system. The Oregon Department of Education is the State educational agency responsible for insuring that all handicapped children receive a free appropriate public education in Oregon. Defendant Verne Duncan is the Superintendent of Public Instruction for the State of Oregon.

The Department of Human Resources is an Oregon State agency charged with administering the State's social service programs. It administers programs through its divisions including the Children's Services Division and the Mental Health Division.

The Children's Services Division (CSD) is an Oregon State agency responsible for administering protective services and mental health programs for dependent and neglected children. CSD is also responsible under Oregon statutes for administering and managing specified and budgeted state funds for children living in Albertina Kerr Centers for Children, of which Kerr Center is one. Defendant Karen Roach is the Administrator of CSD, and is the highest ranking administrative official in the agency.

The Kerr Center Parents' Association is an unincorporated association composed of the parents of 30 handicapped children. Each of the handicapped children resides at Kerr Center, a private facility, and receives public educational services through the Lake Oswego School District. Plaintiffs Jasen Richardson, Matthew Hasek, and Joseph Barrett are handicapped children who reside at Kerr Center. Each of the plaintiffs is receiving special educational services

from the Lake Oswego School District pursuant to a current individualized educational program prepared by Lake Oswego School District and the Kerr Center staff.

Defendant Lake Oswego School District 7J is a municipal corporation duly organized under Oregon law. The district provides regular and special educational services to students residing in and around Lake Oswego, Oregon. Donald Charles is the Superintendent of the Lake Oswego School District.

The Mental Health Division is an Oregon State agency responsible for administering mental health programs in the State of Oregon.

"Attending school district" means the Lake Oswego School District.

"Resident school district" means the school district that the Kerr Center children were residing in at the time they were placed at the Kerr Center.

The term "individualized education program" (IEP) refers to a written statement for a handicapped child that is developed and implemented in accordance with the Code of Federal Regulations, 34 C.F.R. §§ 300.341–300.349.

Intermediate Care Facility for Mentally Retarded and Other Developmentally Disabled Persons (ICF/MR) is defined as set forth in OAR Chapter 309, Division 43, et seq.

## AGREED FACTS

The Kerr Center is a private residential home operated by the Albertina Kerr Centers for Children. It began in 1976 as an intensive care nursing home for children who were severely and profoundly handicapped. It is now certified by the federal government as an intermediate care facility for the mentally retarded which is part of the Medicaid system under Title XIX of the Social Security Act, 42 U.S.C. § 1396, et seq.

Since May, 1981, the Kerr Center has also been licensed by the State of Oregon as a residential training center under the State Mental Health Division. Prior to that time, the Kerr Center was licensed as a nursing home for the mentally retarded through the State Health Division. This change in licensing reflects a policy change from a medical model to a rehabilitative model. The rehabilitative model emphasizes the provision of a full array of rehabilitation services including the requirement that the residents participate in an out-of-facility day program. All students residing at the Kerr Center participate in an out-of-facility day education program conducted by the Lake Oswego School District.

Generally, the ages of the children at the Kerr Center range from 6 to 18. The average age of the children currently residing at the Kerr Center is 15 years.

Children are referred to the Kerr Center from a variety of sources. There is no particular restraint on who may refer a child to the Center. Most referrals come directly from parents. However, since all of these children are severely handicapped and have been treated by or involved with different kinds of clinics, physicians, or services, referral may be made by any of those sources. The children residing at the Kerr Center were neither referred to nor admitted to the Kerr Center because of inadequacies in special education or related services provided by their resident school districts nor because of parental dissatisfaction with resident school district services.

The Kerr Center has established eligibility criteria for placement at the Kerr Center based upon the following factors:

(a) the best interests of the child,

(b) behavioral considerations in terms of maladapted behavior,

(c) safety concerns for the child or for others living at home,

(d) the medical care and or intensity of the medical monitoring that may be required, including dangerous respiratory problems or skin problems,

(e) concerns about the home environment which does not lend itself to teaching the kinds of things a handicapped child would need to learn to live as independently as possible,

(f) additional support services in terms of speech, physical therapy and occupational therapy,

(g) environmental factors including relationship between the parents and the child's influence on the family unit, including siblings.

At the time of initial contact, the Kerr Center collects initial information about the child to determine if the particular child's needs and disabilities make the child eligible for admission to the Kerr Center. First, the child must be older than six and younger than 18 years of age and must be severely mentally or physically handicapped. Once the application is processed and a determination is made that a particular child falls within the guidelines, the child is placed on a waiting list until an opening occurs.

If an opening occurs, or one is anticipated, the staff at the Kerr Center selects a specific child from the waiting list for entry into the program. At this point, the Kerr Center initiates a third-party review process as required by federal Medicaid regulations. The child's application for admission to the Kerr Center, together with recent evaluations, is forwarded to the State Mental Health Division's Diagnosis and Evaluation Center located in Salem, Oregon. The Diagnosis and Evaluation Center reviews a social evaluation, a psychological evaluation, and a medical evaluation made of the child in the 90 days previous to the review. The Diagnosis and Evaluation Center then determines if the child is eligible for involvement in a Medicaid funded intermediate care facility for the mentally retarded (ICF/MR) and if so, authorizes payment to Kerr Center once admission is authorized.

The Mental Health Division monitors the provision of services within Title XIX facilities. Twice a year the Mental Health Division conducts an "Independent Professional Review/Utilization Review." The purpose of this review is to confirm that each of the residents is receiving the training, care and rehabilitative services he or she is supposed to receive and that each resident is placed appropriately.

One of the requirements of the Title XIX program is that all residents must leave the facility for a "day program." The Kerr Center program meets this requirement by sending its residents to the Lake Oswego School District's educational programs. If Kerr Center did not send its residents to this day program, it would not be complying with Title XIX requirements.

The Mental Health Division has authority to enforce Title XIX requirements. It has two options for dealing with noncompliance with Title XIX: it can "de-certify" an individual handicapped resident or it can "de-certify" an entire facility. De-certification means that Title XIX funds can be discontinued either for the handicapped resident or the facility until the noncompliance is remedied.

A case manager allocated to the Clackamas County Mental Health Department monitors services provided to the handicapped children residing at the Kerr Center on behalf of the State Mental Health Division. The case manager is notified when children leave the facility for an extended period of time. No child may leave the facility for 14 days or more without specific written authorization and prior approval from the case manager. If the child is going to leave the facility for more than 30 days, authorization must be received from the chief of ICF/MR services within the Mental Health Division.

In determining whether a child may leave the facility, the staff must decide whether or not leaving is in the best interests of the child. This review involves accumulation of records and assessments made by the child's staff at the time of leaving to provide assistance for entry into the next program. The recommendation is forwarded to the Diagnosis and Evaluation Center of the Mental Health Division for review and approval. There has not been a case where the Mental Health Division regulatory authorities precluded a child from being released from the facility.

If the child is enrolled in school as part of the evaluation process, an attempt is made to get the current IEP, if any, from the

resident district. When a child is admitted to Kerr Center, a team of professionals develops a treatment and rehabilitation program to be implemented at Kerr Center. At the same time, a separate team is formed to develop an IEP for the child. Generally, the IEP team consists of the parents, a Lake Oswego School District representative, a Kerr Center representative familiar with the child, and other professionals knowledgeable as to the child's needs.

Each of the current residents of the Kerr Center has been admitted through the Mental Health Division's Title XIX admissions process. Each of the current residents of Kerr Center has been subject to the Mental Health Division's monitoring process. Each of the Kerr Center residents and the Kerr Center facility are currently certified as eligible for Title XIX funding.

Third-party school districts played no part in determining whether or not the Kerr Center was an appropriate placement for the plaintiffs. Plaintiffs were not placed, enrolled, sent or referred to Kerr Center by the third-party school districts. Third-party school districts have not entered into any written contracts with Lake Oswego under ORS 339.125 nor enrolled any of plaintiffs pursuant to ORS 343.277 in Lake Oswego schools.

Until recently third-party school districts were not informed of the progress or, in many cases, even the placement of children from their districts at Kerr Center. Third-party school districts have not been kept advised as to the status, special education, related services, changes in services, preparation and revision of IEP, testing, or other details concerning the services being provided to children from their districts by the Lake Oswego School District. Until recently third-party school districts were not informed of or invited to attend planning conferences, such as IEP meetings and IEP review meetings, regarding children at Kerr Center from their districts.

Prior to the implementation of EAHCA the children residing at the Kerr Center were educated within the Kerr Center itself. Originally, it was anticipated that the residents of Kerr Center would have severe medical needs that would prohibit education through the public schools. Soon after Kerr Center opened it became apparent that the building could not accommodate children with "severe medical needs." Thus, the population began to change and children were admitted who could be educated in public school settings. Since the implementation of EAHCA, Kerr Center children have been receiving their education in Lake Oswego School District schools.

Currently the program offered by the Lake Oswego School District for education of the children at the Kerr Center involves six multi-handicapped children at Hallinan, an elementary school with two teachers who job share. Eight multi-handicapped students attend Lake Oswego Junior High School, with one full-time teacher assigned to those students. One student attending Lake Oswego Junior High School is emotionally disturbed and is not involved with the multi-handicapped classroom. One student attending Lake Oswego High School is not involved in the multi-handicapped program and is "mainstreamed." There are four multi-handicapped Kerr Center children who attend Clackamas County Educational Service District programs for the trainable mentally retarded. Three multi-handicapped children attend the regional program for the physically handicapped in Portland and six multi-handicapped children attend the regional program for the deaf. The remaining student has graduated from Lake Oswego High School, is attending Portland Community College, is still under the age of 21, and is still eligible for care at the Kerr Center.

Lake Oswego School District is the resident school district for two children being educated at the Kerr Center.

## FUNDING FOR SPECIAL EDUCATION

The State of Oregon has entered into an agreement with the federal government whereby the State has agreed to insure that all handicapped children in Oregon receive a free appropriate public education. The pur-

pose of the agreement is to qualify the State for receipt of federal funds for special education pursuant to EAHCA. The State, through the Oregon Department of Education, submits an "Annual Program Plan Amendment" which reflects the State's covenants, agreements, and assurances to the federal government. Pursuant to assurances given in the Annual Program Plan, the Governor of Oregon issued an executive order on October 28, 1977, requiring that the Department of Education enter into interagency agreements with State agencies to provide educational services to handicapped children.

The State of Oregon uses a variety of sources of funds to manage special education programs for handicapped children. *Local school district programs* are generally funded through the Handicapped Child Program, Basic School Support, EAHCA "flow-through" funds (see below), and local school district funds. *State-operated programs* are funded through state general fund appropriations, Chapter I funds, and EAHCA "discretionary" funds.

The State of Oregon Handicapped Child Program is a special state fund which provides up to a 30% reimbursement to school districts for the extra cost of educating handicapped children. School districts can claim reimbursement on approved costs, such as teacher salaries, special equipment, and transportation.

The State of Oregon Basic School Support fund is a state fund which goes directly to all local school districts on a per capita basis for all children counted on the school district's average daily membership. Special education children who receive services through "State-operated programs" are not counted for purposes of determining a school district's amount of Basic School Support. All other special education children generate Basic School Support funds for their local school districts.

EAHCA provides a grant to the State of Oregon for educating handicapped children. Seventy-five percent of the grant must be paid to the school districts whose children generate the grant. These are called "flow-through" funds. The amount each school district receives depends on the number of special education children claimed on the district's Handicapped Child Census. Special education children who are educated in state-operated programs and who are eligible for Chapter I funds are not counted in the local district's Handicapped Child Census and do not generate "flow-through" funds for the local district.

The remainder of EAHCA funds are used for two purposes. Five percent of the EAHCA funds are used by the Oregon Department of Education to administer the EAHCA program. Twenty percent of the EAHCA funds are discretionary funds that are allocated by the state legislature. Currently, all of these funds are used in state-operated programs. "State-operated programs" are special education programs named in state statutes as recipients of state general fund dollars. In addition, the State of Oregon pays through the county school funds for a portion of the cost of educating special education children in state-operated programs. One of the state-operated programs listed in state statutes is the Albertina Kerr Center, of which Kerr Center is a part.

"Chapter I" funds are provided by a federal grant pursuant to Section 121 of the Elementary and Secondary Education Act of 1965. 20 U.S.C. 2761, *et seq.* A portion of Chapter I funds must be spent on handicapped children in state-operated programs or programs for which the state has responsibility. Children in state-operated programs are counted on an annual basis by the state agency administering the state funds. Chapter I funds are distributed to the program serving these special education children on a per capita basis.

Children who live at Kerr Center receive educational services from the Lake Oswego School District. On a biennial basis, the legislature enacts an appropriation of state general fund dollars to support the educational programs of children living in certain facilities listed in ORS 343.960, including the Kerr Center. The Children's Services

Division manages and administers this legislative appropriation for these facilities.

The Lake Oswego School District's educational program for children living at Kerr Center is funded through this appropriation of state general funds together with Chapter I funds. In fiscal year 1981–83, Lake Oswego received $18,487 in Chapter I funds for Kerr Center. For fiscal year 1981–83, the Oregon legislature provided CSD with $132,281 of state general funds to be used toward the cost of education for handicapped children residing at the Kerr Center. In addition, the State of Oregon bills the county school fund of resident school districts for a portion of the cost of educating children at Kerr Center. Kerr Center children do not generate Basic School Support or EAHCA "flow-through" funds for Lake Oswego School District or for their own resident school districts. In years when Lake Oswego School District uses its own funds to supplement the Kerr Center program, Lake Oswego School District can receive partial reimbursement from the State of Oregon under the Handicapped Child Program.

### HISTORY OF THIS DISPUTE

Since the inception of the Kerr Center program, Lake Oswego has provided the educational component of the handicapped children's program. This educational component has been provided pursuant to ORS 343.965 which, until amended by the 1981 Oregon legislature, read as follows:

(1) The district providing the education described in ORS 343.960 shall receive from the Children's Services Division as reimbursement for moneys appropriated therefor an amount equal to the cost of such education.

ORS 343.965(1) now reads:

Subject to the availability of funds therefor and subject to the terms of the agreement between the school district and the Children's Services Division:

(1) The district providing the education described in ORS 343.960 shall receive from the Children's Services Division as reimbursement for moneys appropriated

therefor an amount equal to the agreed cost of such education.

For the 1982–83 school year, the Oregon legislature budgeted for CSD fewer funds than necessary for the cost of education of the handicapped children residing in private facilities listed in ORS 343.960, including Kerr Center students.

At its July 12, 1982 board meeting, the Lake Oswego School District determined it could not lawfully pay the difference between the amount offered by CSD and the actual amount necessary to provide the services. The only solution was to reduce drastically the program offered to the children at the Kerr Center.

On or about July 27, 1982, the Superintendent of the Lake Oswego School District sent a letter to each of the resident school districts asking each to reimburse Lake Oswego School District for the prorata cost of providing the out-of-facility program for children at the Kerr Center. Only Bend # 1, Springfield # 19, and Pine Eagle # 61 agreed to pay such costs.

On or about September 1, 1982, the Lake Oswego School District advised CSD and the Department of Education that Lake Oswego School District would no longer be able to provide the out-of-facility educational program for children residing at the Kerr Center.

Plaintiffs' attorneys, on or about August 30, 1982, notified the Lake Oswego School District and the CSD that its clients were requesting a due process hearing from each agency and requested assurances that the Kerr Center children would continue receiving educational services pending the outcome of the hearing. Plaintiffs also notified the Oregon Department of Education, on or about August 30, 1982, that Lake Oswego was terminating services and requested that the Department of Education initiate direct service to the Kerr Center children pursuant to 34 C.F.R. 300.360.

In response, CSD denied any responsibility for providing funding for the educational program to students at the Kerr Center

beyond that budgeted by the Oregon legislature.

On September 2, 1982, the attorney for the Lake Oswego School District advised plaintiffs that Lake Oswego School District would not provide a due process hearing nor provide the educational program for the students residing at the Kerr Center.

Subsequently, all plaintiffs sought a temporary restraining order. In order to maintain the status quo pending resolution of these matters, this court has granted temporary restraining orders submitted on behalf of plaintiffs and the Lake Oswego School District.

## ANALYSIS AND RULING

Plaintiffs seek injunctive and declaratory relief. They seek to enjoin Lake Oswego School District from discontinuing the educational program it provides to plaintiffs. Plaintiffs also seek a declaration of the funding responsibilities of the various defendants so as to assure prospectively that the educational programs now afforded to plaintiffs will continue without disruption.

Neither the plaintiffs nor the defendants challenge the placement of plaintiffs in the Kerr Center, nor do they challenge the quality of the education plaintiffs are receiving from the Lake Oswego School District. Furthermore, neither plaintiffs nor defendants contend that plaintiffs' parents should provide financial assistance for plaintiffs' education. All agree that under state and federal law plaintiffs are entitled to a free appropriate public education. None can agree upon which political entity the costs of such an education should fall. The court will begin by analyzing the contentions of the parties.

### A. *Plaintiffs' Contentions*

Plaintiffs contend that all defendants are "jointly and severally" responsible for plaintiffs' free appropriate public educations. Plaintiffs cite numerous state and federal statutes and regulations to support their views. They insist that lack of available funds is no excuse and cite a United States Department of Education report to the State of Oregon advising the State of federal concerns about Oregon's ability to guarantee a free appropriate public education for its handicapped children because of lack of funding.

### B. *Lake Oswego School District's Contentions*

Lake Oswego School District agrees with plaintiffs that the unavailability of funds is not a sufficient reason to avoid the responsibility of providing a free appropriate public education for handicapped children; however, it contends that the responsibility to educate non-resident handicapped children such as plaintiffs should not fall on the Lake Oswego taxpayers. It argues that the State of Oregon through its Department of Education or Department of Human Resources (including CSD) is obligated to provide adequate funding for state and federally mandated education for plaintiffs. Lake Oswego School District contends that the Oregon legislature cannot abrogate the State's responsibility by limiting the necessary funding.

### C. *Resident School Districts' Contentions*

Defendants resident school districts argue that they are not financially responsible for paying Lake Oswego School District for providing to plaintiffs a free appropriate public education because they did not place, enroll or refer plaintiffs to the Kerr Center and they did not contract with Lake Oswego School District to provide a free appropriate public education for plaintiffs; that in several instances they did not know plaintiffs were enrolled in Lake Oswego School District schools; that they have not failed or refused to offer plaintiffs a free appropriate public education; that they have had no part in determining the appropriateness of plaintiffs' placement at Kerr Center or the services offered to plaintiffs by Lake Oswego School District; that they receive no basic school support funds or "flow-through" funds on plaintiffs' behalf because plaintiffs are not counted on the resident school district's handicapped child

census, and in fact, each of their county school funds has been billed under ORS 343.307 for a portion of the costs incurred in educating plaintiffs in the Lake Oswego Schools, resulting in fewer state dollars going to their districts. Basically, the resident school districts argue that it does not make legal sense to hold them financially responsible for services provided to plaintiffs by state agencies or other school districts that have voluntarily assumed those duties. They also argue that if the Oregon legislature intended for resident school districts to be financially responsible for Kerr Center children beyond what the legislature provides, it could and would have so stated. Furthermore, they contend that the State of Oregon cannot discharge its agreement with the federal government to provide a free appropriate public education to handicapped children by leaving the financing to the vagaries of local school district financing.[1]

### D. *State Defendants' Contentions*

State defendants first contend that the only justiciable issue before the court is a declaration of the nature and extent of the various defendants' funding responsibilities for the education of plaintiffs. This court agrees with state defendants.[2]

State defendants next argue that the EAHCA imposes no specific funding obligations on them but only requires that the State of Oregon, in return for receiving federal funds, provide assurances of compliance, a plan for implementing those assurances, and procedural safeguards to guarantee that handicapped children are provided a free appropriate public education. The state defendants claim they have complied with all of these requirements. State defendants argue that the only possible State funding requirement of EAHCA is that if a local school district fails to provide a free appropriate public education for its local handicapped children, then the State Department of Education must use the payments (state and federal) which would have been available to such local school district to provide a free appropriate public education for these children. 20 U.S.C. § 1414(d)(1).[3]

State defendants also argue that the Lake Oswego School District is responsible for providing plaintiffs a free appropriate public education because plaintiffs are "dependent" children pursuant to ORS 339.165, and since these "dependent" children are "placed" within the Lake Oswego School District, the Lake Oswego School District is the school district responsible for their free

---

1. Centennial School District also argues that plaintiffs have not exhausted their state administrative remedies and thus are not allowed to bring this action in the United States District Court. Plaintiffs requested due process hearings from both Lake Oswego School District and CSD and timely notified the State Department of Education of the problems. No due process hearings were allowed. Under these facts and circumstances, failure to exhaust state administrative remedies is not a bar to this action.

2. State defendants claim that any injunctive relief ordered against them would be barred by the Eleventh Amendment to the United States Constitution. This court need not decide this issue in these motions for summary judgment. Declaratory relief is the only relief this court will grant to plaintiffs at this point in these proceedings.

3. 20 U.S.C. § 1414(d)(1) provides:
   Whenever a State educational agency determines that a local educational agency—
   (1) is unable or unwilling to establish and maintain programs of free appropriate public

education which meet the requirements established in subsection (a) of this section;
   \* \* \* \* \* \*
   the State educational agency shall use the payments which would have been available to such local educational agency to provide special education and related services directly to handicapped children residing in the area served by such local educational agency. . . .
From the allocation of funds under the EAHCA, 20 U.S.C. § 1411, and the State's funding structure for special education, it is clear that section 1414(d) does not apply to a State-operated program for handicapped children such as the Kerr Center educational program. The Kerr Center educational program is funded directly by the State already, and Kerr Center children generate no EAHCA "flow-through" funds or other State funds either for their resident school districts or for the Lake Oswego School District which could be used by the State to fund their educations, as contemplated by section 1414(d).

appropriate public educations. State defendants argue that the Lake Oswego School District, in turn, may seek reimbursement from plaintiffs' resident school districts which have the ultimate responsibility for plaintiffs' free appropriate public educations. ORS 339.185(3)–(7).

## DECLARATION

The EAHCA, 20 U.S.C. § 1412, provides:

In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Commissioner that the following conditions are met:

(1) The State has in effect a policy that assures all handicapped children the right to a free appropriate education.

\* \* \* \* \* \*

(6) The State educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency.

34 C.F.R. § 300.600 reiterates the responsibility of the State educational agency, here the Oregon Department of Education, for "insuring" that the requirements of the Act and the regulations promulgated pursuant thereto are carried out. The Senate Report on this Act contains the following comment on section 1412(6):

The Committee bill requires that the State educational agency be responsible for insuring that all requirements of the Act are carried out, and that all education programs for handicapped children within the State, including all such programs administered by any other State or local agency, must meet State educational agency standards and be under the general supervision of persons responsible

for education of handicapped children. This provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that in the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, the State educational agency shall be the responsible agency.

\* \* \* \* \* \*

The Committee considers the establishment of single agency responsibility for assuring the right to education of all handicapped children of paramount importance. Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a central agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency.

Senate Report No. 168, 94th Cong., 1st Sess. 24, *reprinted in* 1975 U.S.Code Cong. & Ad. News, 1425, 1448.

Plaintiffs are participating in a state-operated, as opposed to a local school district educational plan for handicapped children. While Kerr Center is a private residential facility, and while plaintiffs were referred to Kerr Center from a variety of sources including parents, physicians, clinics, etc., whether or not plaintiffs were admitted to and whether or not plaintiffs shall remain in Kerr Center depends upon the Mental Health Division of the State Department of Human Resources. The Mental Health Division essentially determines who is placed in Kerr Center. The Mental Health Division certifies upon whose behalf Title XIX funds are received.[4]

---

4. In order to be admitted to a Title XIX residen-      tial program, the Oregon Mental Health Divi-

The Mental Health Division monitors a review of plaintiffs' training and rehabilitative services twice a year. The Mental Health Division even determines if and when plaintiffs may leave the Kerr Center. As such, 34 C.F.R. § 300.401 applies. That regulation provides:

§ 300.401  Responsibility of State educational agency.

Each State educational agency *shall insure* that a handicapped child who is placed in or referred to a private . . . facility by a public agency:

(a) Is provided special education and related services:

(1) In conformance with an individualized education program which meets the requirements under §§ 300.340–300.349 of Subpart C;

(2) At no cost to the parents; and

(3) At a school or facility which meets the standards that apply to State and local educational agencies (including the requirements in this part); and

(b) Has all of the rights of a handicapped child who is served by a public agency.

(emphasis added).

This court concludes that under the EAHCA and the regulations promulgated pursuant thereto, the Oregon Department of Education, which is the State educational agency for the State of Oregon, has the responsibility to insure that the educational programs required by the EAHCA for these handicapped children referred to a private facility by a State agency are not only properly monitored and supervised, but that they are *funded*. The responsibility to assure a free appropriate public education for these handicapped children cannot be separated from the responsibility to fund that education. *See, Vander Malle v. Ambach,* 673 F.2d 49 (2d Cir.1983); *Kruelle v. New Castle County School District,* 642 F.2d 687 (3d Cir.1981).

■ The court must now review the laws that the State of Oregon has adopted to determine if the Oregon Department of Education (State educational agency) has "insured" pursuant to 20 U.S.C. § 1412(6), 34 C.F.R. § 300.600, and 34 C.F.R. § 300.401 that these plaintiffs are provided a free appropriate public education. Unless the State of Oregon has provided a system for financing a free appropriate public education for these plaintiffs, the Oregon Department of Education cannot "insure" a free appropriate public education for them. While the State of Oregon is free to design its own system for financing a free appropriate public education, *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), it cannot abrogate its responsibility to design *and to provide for funding of* that system without being in violation of the assurances it has provided to the federal government in exchange for receiving federal funds under EAHCA. One way to assure that funds are available is to provide by statute that local school districts shall provide the necessary funds.

Under Oregon law, the only possible way that Lake Oswego School District or the resident school districts could be required to pay for plaintiffs' free appropriate public education is if plaintiffs are "dependent" children. ORS 339.185(1) provides that a dependent child must be admitted to the public schools of the local district in which the child has been placed. The "attending district," defined in ORS 339.165(1) as the district in which the dependent child attends school, must notify the Oregon Department of Education of the names and number of days of attendance of each dependent child being educated in its district. ORS 339.185(3), (5). The Oregon Department of Education then computes the costs of these children's education and bills each child's "resident district," defined in ORS 339.165(3) as the school district in which the dependent child's parents or legal guardian resided when the child was made a ward of the public agency or became a dependent child. ORS 339.185(4) and (5). The resi-

sion must conclude that the individual's needs can be met by the program and that admission

is the best available plan for that individual. 42 C.F.R. § 442.418.

dent school districts must then reimburse the attending districts.

State defendants contend that plaintiffs are "dependent children," entitling the Lake Oswego School District to bill the children's resident school districts for the cost of their free appropriate public educations. The dependent children statutes, however, expressly exclude Albertina Kerr Center of which Kerr Center is a part. ORS 339.185(2). Furthermore, the funding schemes for dependent children and Kerr Center children are completely different and irreconcilable. The cost of educational programs for dependent children is billed to the resident school districts and there are specific requirements regarding notification, record-keeping, and reporting. ORS 339.185(3)–(5). The educational costs of Kerr Center children are paid by the Children's Services Division pursuant to a contract between CSD and the providing district subject to the availability of funds. ORS 343.965. The resident school districts forfeit basic school support, EAHCA "flow-through" funds, and a portion of their county school fund revenues with respect to children in Kerr Center programs, but retain those funds with respect to dependent children. ORS 327.010, 343.960(4), 343.305, and 343.281(6). If Kerr Center children were "dependent" children, then Lake Oswego School District would be paid twice and the resident school districts charged twice for these children. Furthermore, the Joint Ways and Means Subcommittee of the Oregon Legislature meeting in 1981 considered, but rejected, a proposal presented by CSD that would have allowed the Lake Oswego School District to bill the resident districts in a manner similar to that provided for in the dependent children statutes.

After searching the Oregon statutes, this court concludes that the State of Oregon has a statutory scheme which places the financial responsibility for funding free appropriate public educations for plaintiffs upon the State of Oregon through the CSD.

There is nothing in the Oregon statutes that requires either the Lake Oswego School District or the resident school districts of these plaintiffs to provide funds for free appropriate public educations for them while they reside in Kerr Center. While the State of Oregon has enacted a system for financing free appropriate public educations for plaintiffs, it has not provided those funds necessary to supplement the federal funds received under EAHCA. Until the Oregon legislature provides such funds, or until it enacts legislation clearly placing the financing burdens upon the local school districts or upon the Lake Oswego School District, or until it resolves in some other way the funding for the free appropriate public educations of these plaintiffs, the Oregon Department of Education cannot "insure" and is not "insuring" that these handicapped children will receive free appropriate public educations as required by federal law.

The court hereby declares that:

1. State defendants and in particular the Oregon Department of Education are in violation of 20 U.S.C. § 1401, et seq. for failure to insure that these plaintiffs will receive free appropriate public educations.

2. Defendant Lake Oswego School District is not in violation of 20 U.S.C. § 1401, et seq. because it has no legal responsibility under Oregon law to provide these plaintiffs with free appropriate public educations as required by 20 U.S.C. § 1401.

3. Defendants resident school districts are not in violation of 20 U.S.C. § 1401, et seq. because resident school districts have no legal responsibility under Oregon law to provide these plaintiffs with free appropriate public educations as required by 20 U.S.C. § 1401.

In deference to the Oregon legislature, which has the responsibility and the expertise to resolve this problem, this court declines at this time to consider the remedy of injunctive relief.[5] However, the temporary injunction entered herein *pursuant to the*

---

**5.** If this case is not resolved upon the basis of this Declaration, and if a request is again made for injunctive relief, this court will then confront and address the issue of the Eleventh Amendment as a bar to injunctive relief.

*consent of all of the parties* shall remain in force and in effect for a period of 90 days. During that time the parties shall meet and attempt to agree upon a plan which will resolve this dispute. This court shall assist in any way possible. At the end of 90 days, if this matter has not been resolved, the court shall hold a status conference and determine what steps and procedures shall be taken thereafter.