842 F.2d 1052
 45 Ed. Law Rep. 1052
 KERR CENTER PARENTS ASSOC.; Jasen Richardson, By and
Through his parent Candace Richardson; Matthew Hasek, By
and Through his legal guardian Barbara Hasek; Joseph
Barrett, By and Through his parent Robert Barrett,
Plaintiffs-Appellees,
v.
Donald CHARLES and Lake Oswego School District,
Defendant-Cross-Claimants Appellees,
v.
Karen ROACH; Verne Duncan; the Children's Services
Division, and the Oregon Department of Education,
Defendants-Cross-Claim-Defendants-Appellants.
Nancy G. KLINGER et al., Third-Party Plaintiffs-Appellees,
v.
CENTENNIAL # 28J, et al., Third-Party Defendants,
and
Karen Roach; Verne Duncan; Children's Services Division
and Oregon Department of Education, Third-Party
Defendants-Appellants.
KERR CENTER PARENTS ASSOC.; Jasen Richardson, By and
Through his parent Candace Richardson; Matthew Hasek, By
and Through his legal guardian Barbara Hasek; Joseph
Barrett, By and Through his parent Robert Barrett,
Plaintiffs-Appellants,
v.
Donald CHARLES; Karen Roach; Vern Duncan; the Lake Oswego
School District; the Children's Services
Division; and the Oregon Department of
Education, Defendants-Appellees.
 Nos. 84-4299, 84-4335.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1986.
Withdrawn from Submission Oct. 14, 1987.
Resubmitted March 3, 1988.
Decided March 9, 1988.
 
 David B. Hatton, Oregon Developmental Disabilities Advocacy Center, and Steven Brischetto, Portland, Or., for plaintiffs.
 Hunter B. Emerick, Lake Oswego School Dist., Portland, Or., for Lake Oswego School Dist. and Donald Charles.
 Robert W. Muir, Asst. Atty. Gen., Salem, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before FLETCHER, ALARCON and WIGGINS, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The Oregon Department of Education and the Children's Services Division of the Department of Human Resources appeal from an order of the district court granting summary judgment in favor of the Kerr Center Parents Association and the Lake Oswego School District. The Kerr Center Parents Association cross-appeals from an order denying its petition for attorney's fees.
 
 
 2
 The district court found that the state agencies were in violation of the Education for All Handicapped Children Act, 20 U.S.C. Sec. 1401 et seq. (EAHCA), for failing to insure that adequate funding would be provided for the education of children residing at the Kerr Center. The court ordered the state agencies to reimburse the Lake Oswego School District for the costs it incurred in providing educational services to those children.
 
 
 3
 The state agencies contend that the suit was barred by the state's Eleventh Amendment immunity and by plaintiffs' failure to exhaust available administrative remedies. They also argue that the court erred in its determination of the merits, as well as in the relief ordered. We reverse and remand to the district court.
 
 FACTS
 
 4
 Plaintiff Kerr Center Parents Association is composed of the parents of 30 handicapped children residing at the Kerr Center. The Kerr Center, a private facility, is certified by the federal government as an intermediate care facility for the mentally retarded which is part of the Medicaid system under Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq. It is also licensed by the State of Oregon's Department of Human Resources as a residential training center. Jasen Richardson, Matthew Hasek, and Joseph Barrett are handicapped children residing at the Kerr Center.
 
 
 5
 Defendant/cross-claimant/third-party plaintiff Lake Oswego School District (LOSD), a municipal corporation, is the school district in which Kerr Center is located. It provides public education to the children residing at the Kerr Center. Donald Charles is the Superintendent of the Lake Oswego School District. Third-party plaintiff Nancy Klinger is a resident and taxpayer of LOSD.
 
 
 6
 Defendants/cross-claim defendants/third-party defendants Oregon Department of Education (ODE) and Children's Services Division (CSD) are Oregon state agencies. The Oregon Department of Education is the agency responsible under federal law for ensuring that all handicapped children in Oregon receive the "free appropriate public education" required by the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. Secs. 1400-1420 (1986). The Children's Services Division of the Department of Human Services is responsible under Oregon law for administering certain state funds for children living at the Kerr Center. Verne Duncan is the Superintendent of Public Instruction for the State of Oregon, and Karen Roach is the administrator of the Children's Services Division. Together, these four defendants are referred to as the "State defendants".
 
 
 7
 Third-party defendants Centennial # 28J, et al., are school districts in which Kerr Center children resided at the time they were placed in the Kerr Center. They are referred to as the "resident school districts" of these children, while LOSD is referred to as the "attending school district."[1] ]
 
 
 8
 Pursuant to the EAHCA, the State of Oregon has agreed to ensure that all handicapped children in Oregon receive a "free appropriate public education." By virtue of this agreement, the State qualifies for receipt of federal funds for special education. In addition to EAHCA funds, the State uses funds from a variety of sources, both state and federal, to provide educational programs for handicapped children.
 
 
 9
 Local school district programs are funded through EAHCA "flow through" funds, Basic School Support, the Handicapped Child Program, and local school district funds. EAHCA "flow-through" funds and Basic School Support, a state fund, go directly to local districts and are generated on a per capita basis by all children in local school district programs. The Handicapped Child Program is a state fund which provides partial reimbursement to local districts for the added costs of educating handicapped children.
 
 
 10
 State-operated programs, of which the Kerr Center is one, are special education programs named in the state statutes as recipients of general fund dollars. These funds are administered by CSD. In addition to general fund appropriations, state-operated programs are funded by EAHCA "discretionary" funds and Chapter I funds. The latter are provided by a federal grant pursuant to 20 U.S.C. Sec. 2761 et seq., and are generated on a per capita basis by children in state-operated programs. On the other hand, children in state-operated programs are not counted in determining a school district's allotment of EAHCA flow-through funds or Basic School Support.
 
 
 11
 Children at the Kerr Center receive educational services from the Lake Oswego School district. These services are funded by a biennial appropriation of state general funds together with Chapter I funds. For the fiscal period 1981-83, LOSD was allotted $18,487 in Chapter I funds and $132,281 in state general funds to cover the cost of educating the Kerr Center children. In years when LOSD uses its own funds as well, it is eligible for partial reimbursement through the Handicapped Child Program. On the other hand, since they are enrolled in a state-operated program, the Kerr Center children do not generate Basic School Support funds or EAHCA flow-through funds either for LOSD or for their resident school districts. Moreover, the State bills the county school funds of resident school districts for a portion of the cost of educating those children.
 
 
 12
 Under the funding arrangements described above, the educational services provided by LOSD to the Kerr Center children depend upon the appropriation of state general funds. General fund appropriations for services provided by local school districts to children in state-operated programs are made pursuant to ORS 343.965(1), which, prior to amendment in 1981, provided for appropriation of an amount "equal to the cost [to the local school district] of such education". The local school district would then receive reimbursement in this amount from CSD. However, in 1981, the Oregon legislature amended ORS 343.965(1) to make the appropriation "subject to the availability of funds."
 
 
 13
 Then, for the 1982-83 school year, the legislature appropriated fewer funds than were needed to cover the cost of educating the handicapped children residing at the Kerr Center and other private facilities listed in ORS 343.960. In July, 1982, LOSD determined that it could not lawfully make up the difference and that it would have to drastically reduce the program offered to the Kerr Center children.
 
 
 14
 In August, 1982, plaintiffs requested a "due process hearing" from LOSD and CSD pursuant to 20 U.S.C. Sec. 1415(b)(2).[2] Plaintiffs also requested assurances that the Kerr Center Children would continue to receive educational services pending the outcome of the hearing.[3] Plaintiffs notified the Oregon Department of Education and requested that it initiate direct service to the Kerr Center Children. In response, both CSD and LOSD declined to provide a hearing. CSD denied that it had any responsibility to provide funds beyond those appropriated by the legislature, and LOSD notified plaintiffs that it would no longer provide educational services for the Kerr Center children.
 
 
 15
 On September 3, 1982, plaintiffs filed a complaint in the United States District Court for the District of Oregon requesting declaratory and injunctive relief. In their first cause of action, plaintiffs alleged a violation of their right to a free appropriate public education under the EAHCA, Sec. 504 of the Rehabilitation Act of 1973, and 42 U.S.C. Sec. 1983. In their fourth cause of action, plaintiffs alleged that defendants violated their right to procedural due process under the EAHCA, the Rehabilitation Act, the Fourteenth Amendment, and 42 U.S.C. Sec. 1983 by (1) failing to provide a "due process hearing" and (2) refusing to maintain plaintiffs' current educational placements pending the outcome of the dispute. At the same time, plaintiffs moved for a temporary restraining order and a preliminary injunction to maintain the status quo pending a final determination on the merits. On September 7, 1982, the court issued a temporary restraining order pursuant to an agreement by all parties.
 
 
 16
 On September 21, 1981, defendants Charles and LOSD filed a cross-claim against the State defendants, and, together with third-party plaintiff Klinger, filed a third-party complaint against the State defendants and the resident school districts.[4] Charles and LOSD asked the court to enjoin the State defendants from reducing the level of support for services provided to the Kerr Center children, and requested a declaratory judgment defining the financial responsibilities of the various parties. On October 15, 1982, the court issued a temporary restraining order in favor of LOSD, directing continued funding by the State defendants of the programs then provided by LOSD to the Kerr Center children.
 
 
 17
 In an opinion and order issued on September 6, 1983, the district court declared that the State defendants, and in particular the Oregon Department of Education, were in violation of the EAHCA ... failing to ensure that plaintiffs would receive a free appropriate public education. Kerr Center Parents Ass'n v. Charles, 572 F.Supp. 448 (D.Or.1983). The court first determined that, under the terms of the EAHCA and the applicable regulations, the Oregon Department of Education is the agency which bears the responsibility of ensuring that the educational programs required by the EAHCA are adequately funded. Id. at 457-58. Next, the court found that, under Oregon law, neither LOSD nor the resident school districts can be required to pay for the Kerr Center children's free appropriate public education. Id. at 458-59. The court concluded that, while the State of Oregon is free to design its own system of allocating funding responsibilities, the statutes currently place the responsibility of funding plaintiffs' free appropriate public education on the State through CSD. Id. at 458-59.
 
 
 18
 Pursuant to the consent of all parties, a preliminary injunction issued granting the same relief as had been provided by the two temporary restraining orders. Id. at 459-60. The parties were ordered to attempt to resolve the dispute within 90 days, after which time the court would consider what further steps should be taken. Id.
 
 
 19
 When no agreement was reached, the district court, at the request of counsel, undertook to resolve the dispute judicially. Kerr Center Parents Ass'n v. Charles, 581 F.Supp. 166 (D.Or.1983). The court first concluded that the suit was not barred by the Eleventh Amendment, reasoning that the EAHCA was enacted pursuant to Sec. 5 of the Fourteenth Amendment, it had abrogated Oregon's immunity. Id. at 168. Then, in September and October, 1984, the District Court entered final judgments on the motions for summary judgment. Plaintiffs' motion for summary judgment on their first cause of action was granted as to the State defendants and denied as to Charles and LOSD. Third-party plaintiffs Charles, LOSD and Klinger were granted summary judgment against the State defendants,[5] and the resident school districts were granted summary judgment against the third-party plaintiffs. The State defendants were ordered to ensure that plaintiffs would receive a free appropriate public education and that LOSD would be reimbursed for the full cost of providing such an education.
 
 
 20
 Plaintiffs then petitioned for attorney's fees, which were denied.
 
 DISCUSSION
 A. The Eleventh Amendment
 
 21
 In its December 21, 1983 ruling, the district court held that the Eleventh Amendment did not bar this action against the State of Oregon to compel it to provide funds to school districts for the education of handicapped children.
 
 
 22
 The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has consistently held that a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state, even though the express terms of the Amendment do not so provide. Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974). Moreover, the state need not be a named party to the action; the Amendment bars a suit against state officials when "the state is the real, substantial party in interest." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). Thus, as a general rule, the Eleventh Amendment bars a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury. Edelman, 415 U.S. at 663, 94 S.Ct. at 1355; Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).
 
 
 23
 To this general rule, however, there are certain well-established exceptions. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); Doe by Gonzalez v. Maher, 793 F.2d 1470, 1493-94 (9th Cir.1986), aff'd sub nom. Honig v. Doe, --- U.S. ----, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).[6] First, a state may waive its immunity and consent to suit in federal court. See, e.g., Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883). It may effectuate a waiver by its participation in a federal program if Congress has conditioned such participation on the state's amenability to suit in federal court. See Parden v. Terminal R. Co., 377 U.S. 184, 192, 84 S.Ct. 1207, 1212, 12 L.Ed.2d 233 (1964) (state waived Eleventh Amendment immunity by operating railroad in interstate commerce). Second, Congress may abrogate the Eleventh Amendment without the states' consent when it acts pursuant to the enforcement provisions of section 5 of the Fourteenth Amendment. Fitzpatrick v. Bitzer, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). The district court in this case found abrogation of the Eleventh Amendment on this basis.
 
 
 24
 However, these exceptions apply only when certain conditions are met. See Scanlon, 473 U.S. at 238-39, 105 S.Ct. at 3145-46; Maher, 793 F.2d at 1493-94. In Maher, decided after the district court's rulings and after argument before our panel in this case, our court held that California was shielded from liability for damages under the EAHCA under all the exceptions described in Scanlon. But see David D. v. Dartmouth School Committee, 775 F.2d 411, 420-22 (1st Cir.1985), (holding that under standard of Scanlon, suit against State under EAHCA was not barred by Eleventh Amendment), cert. denied, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). California had not expressly waived its general immunity to suit in federal court; Congress had not, in the EAHCA, expressed in unmistakable language its intent to abrogate states' sovereign immunity pursuant to section 5 of the Fourteenth Amendment; nor had Congress conditioned receipt of federal benefits on the states' waivers of immunity. Id. at 1494. Accordingly, the district court's holding in this case that the Eleventh Amendment does not preclude a judgment against the State of Oregon cannot be sustained on the basis the district court used. On the other hand, the district court, as far as we can ascertain from the record and the briefs, has not examined the question of whether Oregon may, itself, have expressly waived general immunity to suit in federal court. Upon remand, this issue may be open for consideration.
 
 
 25
 We have no doubt that the district court was right in its holding that the suit against named officials of the State of Oregon in their official capacities is a suit against the State and that the relief sought against the State would require legislative appropriations. Kerr Center, 581 F.Supp. at 168. The State of Oregon is "the real substantial party in interest" in this suit. Pennhurst, 465 U.S. at 101, 104 S.Ct. at 908.
 
 
 26
 Thus, unless Oregon, itself, has waived general immunity, the judgment against it cannot stand. We nonetheless take occasion to address certain of the other issues in this case. For in the event the State is not immune, we thereby obviate a possible further appeal to this court on the merits. Disposition of the issues that have been fully briefed to us and considered by the district court is appropriate.
 
 B. Exhaustion of Administrative Remedies
 
 27
 The State defendants argue that the district court lacked jurisdiction because the plaintiffs failed to exhaust the administrative remedies available to them under the EAHCA. We agree with the district court that, under the circumstances of this case, exhaustion of administrative remedies was not required.
 
 
 28
 The EAHCA provides for initial recourse to state administrative procedures before an action is brought in district court. The Act provides that whenever a complaint has been received, the parents or guardian of a handicapped child shall be afforded a "due process hearing" conducted either by the state educational agency or by the local educational agency or intermediate educational unit, as determined by state law. 20 U.S.C. Sec. 1415(b)(2). In Oregon, the hearing is conducted by the local school district or, in some cases, the Children's Services Division. O.A.R. 581-15-80, 581-15-81. Any party aggrieved by the findings and decision made in such a hearing may appeal to the state educational agency. 20 U.S.C. Sec. 1415(c). Finally, any party aggrieved by the findings and decision made at the end of the state administrative procedures has the right to bring an action in the district court. 20 U.S.C. Sec. 1415(e)(2).
 
 
 29
 The courts have recognized an exception to the general rule that the administrative remedies provided by the EAHCA must be exhausted before an action may be brought in the district court. Exhaustion is not required where it would be futile or where the administrative remedies available would be inadequate. See Honig v. Doe, 108 S.Ct. at 606; Smith v. Robinson, 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469 n. 17, 82 L.Ed.2d 746 (1984); Doe by Gonzalez v. Maher, 793 F.2d at 1490; Monahan v. State of Neb., 645 F.2d 592, 597 (8th Cir.1981); Wilson v. Marana Unified Sch. Dist. of Pima County, 735 F.2d 1178, 1181 (9th Cir.1984); Armstrong v. Kline, 476 F.Supp. 583, 601-02 (E.D.Pa.1979), remanded on other grounds sub. nom. Battle v. Pennsylvania, 629 F.2d 269 (3d Cir.1980), cert. denied 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); Christopher T. v. San Fran. Unif. Sch. Dist., 553 F.Supp. 1107, 1115 (N.D.Cal.1982).[7] To hold otherwise would impose an unnecessary and unjustified burden on the parents and guardians of handicapped children. Armstrong, 476 F.Supp. at 602.
 
 
 30
 In this case, soon after LOSD determined that it could not make up the difference between the funds offered by CSD and the amount necessary to provide services to the Kerr Center children, plaintiffs requested a due process hearing from both LOSD and CSD. They also requested assurances that the children would continue to receive educational services pending the outcome of the hearing. In response, LOSD declined to provide a hearing and informed plaintiffs that it would not provide the educational program for the Kerr Center Children. CSD denied any responsibility for funding beyond what the Oregon Legislature had appropriated.
 
 
 31
 Under these circumstances, we find that failure to exhaust administrative remedies is not a bar to this action. After plaintiffs were refused a due process hearing, they had no recourse but to seek judicial relief. State defendants nevertheless argue that at this point plaintiffs should have asked the court only to compel an administrative hearing, not to award substantive relief. This argument must be rejected. To begin with, plaintiffs had already taken all measures to secure administrative relief which could reasonably be expected of them. Moreover, further attempts would have proved futile. A hearing before LOSD would have been useless, given that LOSD had already determined that it would not provide the funds necessary for plaintiffs' free appropriate public education. An appeal to the ODE would have been useless as well, since the Department could not provide funds which, under Oregon law, were to be provided by CSD, and which, moreover, the Oregon legislature had not appropriated. In short, the problem posed by the legislature's failure to appropriate sufficient funds is not one which could have been effectively addressed through the administrative process. See Monahan, 645 F.2d at 597.
 
 C. The Merits
 
 32
 The district court found that the State defendants were in violation of the EAHCA for failing to insure that plaintiffs would receive a free appropriate public education. The State defendants argue that this was error. We conclude that it was not.
 
 
 33
 The statute, regulations, and legislative history all make clear that the state educational agency, in this case the ODE, has the ultimate responsibility for assuring that all handicapped children have the right to a free appropriate public education. See 20 U.S.C. Sec. 1412(6); 34 C.F.R. Sec. 300.600; Senate Report No. 168, 94th Cong., 1st Sess. 24, reprinted at 1975 U.S.Code Cong. & Ad.News, 1425, 1448. The State defendants argue that, while plaintiffs have a right to a free appropriate public education, they have no right to such an education outside their resident school districts. They conclude that the State has fulfilled its obligations under federal law by making available to plaintiffs a free appropriate public education in their resident districts.
 
 
 34
 The statute provides that a state, in order to be eligible for federal funds, must have in effect a plan which assures that
 
 
 35
 handicapped children in private schools and facilities will be provided special education and related services ... at no cost to their parents or guardians, if such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency as the means of carrying out the requirements of [the EAHCA] or any other applicable law requiring the provision of special education and related services to all handicapped children within the state.
 
 
 36
 20 U.S.C. Sec. 1413(a)(4)(B). The regulations define the responsibility of the ODE for children placed in private facilities:
 
 
 37
 Sec. 300.401 Responsibility of State educational agency
 
 
 38
 Each State educational agency shall insure that a handicapped child who is placed in or referred to a private school or facility by a public agency:
 
 
 39
 (a) Is provided special education and related services:
 
 
 40
 (1) In conformance with an individualized education program which meets the requirements under Secs. 300.340-300.349 of Subpart C;
 
 
 41
 (2) At no cost to the parents; and
 
 
 42
 (3) At a school or facility which meets the standards that apply to State and local educational agencies (including the requirements of this part); and
 
 
 43
 (b) Has all of the rights of a handicapped child who is served by a public agency.
 
 
 44
 34 C.F.R. Sec. 300.401. State defendants argue that these sections are inapplicable to plaintiffs for two reasons: first, because plaintiffs were not "placed" in the Kerr Center "by a public agency"; and second, because they were not placed there in order to carry out the requirements of the EAHCA.
 
 
 45
 Although children are referred to the Kerr Center from a variety of sources, including their parents, it is the Mental Health Division of the Department of Human Resources that determines which children are admitted and which shall remain there.[8] Under these circumstances, we do not think it was error for the district court to conclude that plaintiffs were "placed" at the Kerr Center by the Mental Health Division, a state agency. At the same time, we find no merit in the State defendants' contention that these sections of the statute and regulations are inapplicable because plaintiffs were placed in the Kerr Center for medical, not educational, reasons. We do not think that their placement there for medical reasons is unrelated to the goal of providing them with a free appropriate public education.
 
 
 46
 Because we conclude, along with the district court, that these children were placed at the Kerr Center by a public agency, we must also conclude that the ODE is responsible under the statute and regulations for ensuring that they are provided with a free appropriate public education while they reside there. See 34 C.F.R. Sec. 300.401. As the district court properly recognized, the ODE cannot fulfill this responsibility unless the State of Oregon has provided a system for adequately funding plaintiffs' education. We now consider whether it has done so.
 
 
 47
 Oregon has provided for funding of the educational programs of children living in the Kerr Center in O.R.S. Secs. 343.960, 343.965. O.R.S. Sec. 343.960(2) provides that the Children's Services Division of the Department of Human Resources shall be responsible for the cost of educating children living in the facilities listed in O.R.S. 343.960(1), including the Kerr Center. Education for these children may be provided by the school district in which the facility is located, in this case the Lake Oswego School District. O.R.S. Sec. 343.960(3). O.R.S. Sec. 343.965(1) provides that the Children's Services Division shall reimburse the attending school district in an amount equal to the agreed cost of such education. Funds for this purpose are appropriated by the state legislature on a biennial basis.
 
 
 48
 The State defendants contend that the statutory scheme provides avenues by which plaintiffs should have sought funding from their resident school districts. They cite in particular O.R.S. Sec. 343.221(3) and O.R.S. Sec. 339.185.[9] However, it is apparent that neither of these provisions are applicable to the children residing at the Kerr Center. Both presuppose that the resident school districts receive funding for those children which can then be made available to the attending school district. In fact, the resident school districts forfeit Basic School Support funds, EAHCA "flow-through" funds, and county school funds for those children enrolled in state-operated programs such as the Kerr Center. In short, the alternative suggested by the State defendants is entirely inconsistent with the funding scheme which the State of Oregon has put in place.[10]
 
 
 49
 Thus, under state law, the financial responsibility for funding plaintiffs' free appropriate public education rests on the State of Oregon through CSD, not on the attending school district, and not on the resident school districts. However, at the time this controversy arose, the provisions of both O.R.S. 343.960(2) and O.R.S. 343.965(1) were made "subject to the availability of funds," and insufficient funds were appropriated. Under these circumstances, we must agree with the district court that the ODE cannot ensure that plaintiffs receive a free appropriate public education. The State of Oregon is free to provide for adequate funding of plaintiffs' education in whatever manner it sees fit, but if it adopts a system whereby financial responsibility is placed on the State through CSD, it cannot then refuse to appropriate sufficient funds to meet that responsibility.
 
 D. Relief
 
 50
 The State defendants argue that the district court erred in granting relief which went further than necessary to eliminate the violation proven. We agree.
 
 
 51
 In its opinion and order of September 6, 1983, the district court took note of the considerable latitude the State has in determining the means by which it will ensure that handicapped children receive a free appropriate public education. In finding that the State defendants were in violation of the EAHCA, the court observed:
 
 
 52
 Until the Oregon legislature provides such funds, or until it enacts legislation clearly placing the financial burdens upon the local school districts or upon the Lake Oswego School District, or until it resolves in some other way the funding for the free appropriate public education of these plaintiffs, the Oregon Department of Education cannot "insure" and is not "insuring" that these handicapped children will receive free appropriate public educations as required by federal law.
 
 
 53
 Kerr Center Parents Ass'n, 572 F.Supp. at 459 (emphasis added). The court thereby recognized that the State could ensure funding of plaintiffs' education either within the then current system whereby LOSD received reimbursement from CSD, or within some other statutory scheme which the legislature might subsequently enact.
 
 
 54
 However, in its judgment order of October 9, 1984, the court ordered the State defendants to "annually reimburse the Lake Oswego School District, in an amount equal to the full cost of providing [plaintiffs] a free, appropriate public education ... pursuant to contract between the Children Services Division and the Lake Oswego School District." In effect, the court ordered the State defendants to return to the funding arrangements in effect before reimbursement by CSD was made "subject to the availability of funds." While this may have been the simplest way for the State defendants to correct their violation of the EAHCA, the court should have made clear that it was not the only way available to them.
 
 
 55
 If, on remand, the district court enters an order that purports to bind the State, it should reflect the fact that, in fulfilling its obligation to provide for adequate funding of plaintiffs' educational programs, the State of Oregon is not forever wedded to the statutory scheme in place before this controversy arose. At the same time, we do not suggest that, if the State is not immune, the district court must rely on mere admonitions to enforce compliance.
 
 E. Standing of LOSD
 
 56
 On appeal, the State defendants have challenged the standing of LOSD to bring a counterclaim against them. If the claim is waivable, we suspect that it was waived in the district court by the State defendants. We say this because it was asserted so weakly, if at all, that the district court did not feel constrained to address it in its thorough and comprehensive opinions.
 
 
 57
 We feel constrained to mention standing here because it goes to the jurisdiction of the federal court over LOSD's counterclaim. On remand, if the issue has any continuing relevance, the district court is in a better position to rule as an initial proposition on whether there was a waiver and to address the merits of the standing issue.
 
 F. Attorney's Fees
 
 58
 In light of the uncertainty of the ultimate disposition of this litigation we do not address the right to attorney's fees at this time except (1) to confirm plaintiffs' concession that the EAHCA provides no statutory basis for attorney's fees, and (2) to point out that attorney's fees cannot be awarded under Sec. 505 of the Rehabilitation Act to plaintiffs making claims for handicapped childrens' "free appropriate public education." See Smith v. Robinson, 468 U.S. 992, 1016-21, 104 S.Ct. 3457, 3470-73, 82 L.Ed.2d 746 (1984); Maher, 793 F.2d at 1479. We do not consider here whether 42 U.S.C. Sec. 1988 provides a basis for fees on the theory that the EAHCA does not preclude a Sec. 1983 suit on an independent due process challenge to state procedures. See Smith, 468 U.S. at 1014-15 n. 17, 104 S.Ct. at 3469-70 n. 17.
 
 CONCLUSION
 
 59
 We REVERSE and REMAND to the district court for such further proceedings as it deems appropriate. Parties shall bear their own costs.
 
 
 
 [1]
 Two of the children at the Kerr Center resided in LOSD at the time of their placement. For these children, LOSD is both the resident school district and the attending school district
 
 
 [2]
 20 U.S.C. Sec. 1415(b)(2) requires that the parents or guardian of a handicapped child be afforded an "impartial due process hearing" whenever a complaint has been received under 20 U.S.C. Sec. 1415(b)(1). Under Oregon law, the hearing shall be conducted by the local school district or, in some cases, by CSD. O.A.R. 581-15-80, 581-15-81
 
 
 [3]
 See 20 U.S.C. Sec. 1415(e)(3)
 
 
 [4]
 In addition to state defendants ODE, Duncan, CSD, and Roach, the third-party complaint was directed against the Department of Human Resources and Leo Hegstrom, its director
 
 
 [5]
 More precisely, third-party plaintiffs' motion for summary judgment was granted as to Duncan, ODE, Roach, and CSD, but denied as to Hegstrom and the Department of Human Resources
 
 
 [6]
 The Court of Appeals' judgment was affirmed with reasons on other grounds unrelated to this issue. It was affirmed on the Eleventh Amendment issue without discussion "[b]ecause we are equally divided on the question whether a court may order a State to provide services directly to a disabled child where the local agency has failed to do so ..." Honig v. Doe, --- U.S. ----, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The panel withdrew this case pending the Supreme Court's decision in Honig. We now decide the Eleventh Amendment issue in this case in reliance on the reasons expressed in our court's opinion in Doe by Gonzalez v. Maher, 793 F.2d 1470 (9th Cir.1986), aff'd sub nom. Honig v. Doe, --- U.S. ----, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)
 
 
 [7]
 The legislative history of the EAHCA supports this view. During the debate on the Senate Conference Report, Senator Harrison Williams, the principal author of the EAHCA, explained that "exhaustion of the administrative procedures established under this part should not be required for any individual complaint filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." 121 Cong.Rec. 37416 (1975)
 
 
 [8]
 See Kerr Center Parents Ass'n v. Charles, 572 F.Supp. at 450-52, 457-58
 
 
 [9]
 O.R.S. Sec. 343.221 provides that a child's resident school district may, under certain circumstances, contract for that child's education with another school district. O.R.S. Sec. 339.185 provides a means by which the resident school district of a "dependent child", as defined in O.R.S. Sec. 339.165, may be billed for the costs of educational services provided by the child's attending school district
 
 
 [10]
 With respect to the dependent child provisions of O.R.S. Sec. 339.185, this inconsistency has been discussed with great thoroughness and clarity by the district court. See Kerr Center Parents Ass'n, 572 F.Supp. at 459. We do not presume to have improved upon that discussion; we only note that it applies equally to O.R.S. Sec. 343.221(3)