848 F.2d 976
 1988-1 Trade Cases 68,070, 47 Ed. Law Rep. 109
 Gerald R. & Helen FERGUSON, Husband and Wife, both
individually and d/b/a; Roveck Productions,
Plaintiffs-Appellants,
v.
GREATER POCATELLO CHAMBER OF COMMERCE, INC.; the Idaho
State Journal, Inc.; the Idaho State University,
Defendants-Appellees.
 No. 86-3722.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1987.
Decided June 6, 1988.
 
 Jeffrey E. Rolig, Hepworth, Nungester & Felton, Twin Falls, Idaho, for plaintiffs-appellants.
 Robert L. Berlin, Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for defendant-appellee Journal.
 Lowell N. Hawkes, Hawkes, Esplin & Burnham, Pocatello, Idaho, for defendant-appellee Chamber.
 J. Kelley Wiltbank, Idaho State University, Pocatello, Idaho, for defendant-appellee ISU.
 Appeal from the United States District Court for the District of Idaho.
 Before SNEED and HALL, Circuit Judges, and STEPHENS,* District Judge.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 Gerald and Helen Ferguson timely appeal from the district court's grant of summary judgment disposing of their claims against The Greater Pocatello Chamber of Commerce, Inc. (Chamber), The Idaho State Journal, Inc. (Journal), and The Idaho State University (ISU) for treble damages and injunctive relief under sections 1 and 2 of the Sherman Act. 15 U.S.C. Secs. 1 & 2 (1982). Ferguson v. Greater Pocatello Chamber of Commerce, Inc., 647 F.Supp. 190 (D.Idaho 1985).
 
 I.
 
 2
 ISU owns and operates the Minidome, a large, covered, multipurpose stadium located on the ISU campus. For over a decade, ISU has leased the Minidome to businesses that wished to hold general interest consumer trade shows during the spring of each year. In 1979, the Fergusons purchased Roveck Productions and produced their first trade show in the Minidome. The Fergusons also produced trade shows during the first week of April for the years 1980 through 1982. In those same years. Chamber and Journal jointly produced a similar trade show in the Minidome, approximately one month after the Fergusons' show.
 
 
 3
 In 1980, Chamber and Journal determined that the Fergusons' trade show was significantly more profitable than theirs because it was the first trade show of the season. They therefore asked ISU to grant them the first time slot in 1981. ISU refused, stating that the Fergusons already had a lease for that time slot. In 1981, Chamber and Journal requested the first trade show slot for 1982. They also asked ISU if they could alternate on a yearly basis with the Fergusons for the first trade show each spring. Again, ISU refused.
 
 
 4
 In 1982, ISU asked Chamber and Journal if they intended to produce a trade show in 1983. Chamber and Journal apparently did not inform ISU of their decision in a timely manner. ISU therefore gave the Fergusons the sole contract for the 1983 spring trade show season. However, in September of 1982, ISU met with Chamber and Journal to discuss ISU's policies regarding the spring trade shows. Chamber and Journal apparently expressed continued interest in producing a springtime trade show, provided they could at least alternate with the Fergusons for the first trade show time slot each spring. Sometime after this meeting, ISU changed its policy regarding the spring trade shows. ISU decided that it would lease the Minidome for only one trade show during the spring of the years 1984 through 1989. ISU further decided to allow all interested parties to bid for the exclusive right to produce the 1984-89 spring trade shows.
 
 
 5
 In 1983, ISU prepared identical "bid packets" for the 1984 spring show. ISU sent these packets to the Fergusons, Chamber and Journal, and another interested promoter, Craig Ellis. The bid packet contained the following terms and conditions: (1) the minimum acceptable bid for each year was $6,000, (2) ISU would also consider the bidder's projected revenue share for the Minidome and its demonstrated ability to produce a trade show as well as its experience, management, and financial solvency, (3) the successful bidder would have the exclusive right to produce the springtime trade show for 1984, and (4) the lease would be renewable upon mutual consent for five additional one-year terms.
 
 
 6
 The Fergusons bid the minimum amount: $6,000. Craig Ellis bid $12,000. Chamber and Journal bid $20,101 and received the exclusive right to produce the 1984 spring trade show. When awarding the contract, ISU stated that it gave the contract to Chamber and Journal because they had demonstrated the ability to produce profitable trade shows in the past and because their bid was substantially higher than the two other bids. Chamber and Journal have produced the subsequent trade shows and have paid ISU the contract price of $20,101 each year.
 
 
 7
 The Fergusons have not attempted to conduct their trade show elsewhere during the spring of those years, nor have they asked ISU for a contract to produce a trade show at any other time of the year. The Fergusons maintain that the Minidome is the only suitable location for a trade show in the area. The Fergusons therefore contend that the defendants' conduct and the six-year lease agreement between ISU and Chamber and Journal violates sections 1 and 2 of the Sherman Act.
 
 II.
 
 8
 We review de novo a grant of summary judgment. Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir.1987). Summary judgment is appropriate if the moving party presents evidence that shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Id. Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting significant probative evidence tending to support its claim that material, triable issues of fact remain. Id.
 
 
 9
 In the context of the case before us, the substantive law is the law of antitrust, and if the claim makes no economic sense, a speculative inference from the jury will not help it. In such an instance, the record on summary judgment must contain further persuasive evidence if it is to support the claim. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986).
 
 
 10
 Richards, 810 F.2d at 902.
 
 III.
 
 11
 The Sherman Act prohibits only restraints or monopolization of "trade or commerce among the several States." The Sherman Act interstate commerce requirement is both a substantive element of a statutory violation and a prerequisite for federal court jurisdiction. The somewhat conclusory allegations of the Fergusons' complaint might not satisfy the commerce requirement, and in its present condition the record fails to indicate whether additional proceedings will reveal that jurisdiction is proper.[1] Here, we address our authority to pass on the merits of the complaint despite the potential jurisdictional defect.
 
 
 12
 The Supreme Court in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), created a three-tier approach for assessing motions to dismiss asserting that defects in the substantive allegations of a complaint have jurisdictional consequences. See Yazoo County Indus. Dev. Corp. v. Suthoff, 454 U.S. 1157, 1160, 102 S.Ct. 1032, 1034, 71 L.Ed.2d 316 (1982) (Rehnquist, J., dissenting from denial of cert.). Under this approach, a court may find the claims raised in the complaint (1) "immaterial" or "wholly insubstantial," (2) "not immaterial," or (3) substantial. See Bell, 327 U.S. at 681-83, 66 S.Ct. at 775-76. Dismissal for lack of jurisdiction is proper only if the claim falls into the first category. Id. The second (and perhaps even the third) tier of Bell contemplates judicial proceedings on the merits under circumstances in which the existence of federal subject matter jurisdiction is open to question. See id.; Yazoo County, 454 U.S. at 1160, 102 S.Ct. at 1034 (Rehnquist, J., dissenting from denial of cert.).
 
 
 13
 The commerce element of the Fergusons' complaint exemplifies the type of allegation courts should address through the three-tier structure of Bell. "[T]he interstate commerce requirement is tied to the merits as well as to the jurisdictional aspects of an antitrust case...." Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 735 (9th Cir.1979); accord Timberlane Lumber Co. v. Bank of America Nat'l Trust & Sav. Ass'n, 549 F.2d 597, 602 (9th Cir.1977). As such, it is distinguishable from "lack of diversity or amount in controversy, or other more traditional jurisdictional defects," with respect to which the Bell approach might speak with less force. See Yazoo County, 454 U.S. at 1161 n. *, 102 S.Ct. at 1034 n. * (Rehnquist, J., dissenting from denial of cert.).
 
 
 14
 We hold that the commerce allegations in the Fergusons' complaint are neither "immaterial" nor "wholly insubstantial" within the meaning of Bell. Accordingly, Bell authorizes us to conduct further proceedings and, if warranted, to dismiss for failure to state a claim even though we are unable at this point to determine conclusively that subject matter jurisdiction exists.
 
 
 15
 In following this procedure we act in conformity with our longstanding practice. We sometimes require a trial in the face of uncertain subject matter jurisdiction. See, e.g., Rosales v. United States, 824 F.2d 799, 803 (9th Cir.1987). And where appropriate, we dispose of substantive issues on appeal in the absence of an unequivocal determination that lower court jurisdiction exists. Our recent opinion in Kerr Center Parents Ass'n v. Charles, 842 F.2d 1052 (9th Cir.1988), is an example of such a case.
 
 
 16
 Among the district court's rulings in Kerr Center was a decision that the eleventh amendment did not bar the plaintiffs' claims. See id. at 1058. After the district court entered judgment, however, we handed down an opinion in a different case contrary to the district court's eleventh amendment ruling. See id. at 1059. Consequently, in Kerr Center we stated that the district court's eleventh amendment determination (a jurisdictional question) "may be open for consideration," and remanded to the district court for a ruling on that issue. See id. Nevertheless, observing that they had "been fully briefed to us and considered by the district court," id. at 1059, we decided additional, nonjurisdictional matters in Kerr Center, including the substantive merits of the claims and the relief ordered. See id. at 1060-63.
 
 
 17
 To similar effect is Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730 (9th Cir.1988). In Kern Oil the district court entered its findings of fact and conclusions of law several days after the entry of judgment and after the appellant had filed its notice of appeal. Appellant argued that the district court lacked jurisdiction to enter its findings of fact and conclusions of law because "filing a notice of appeal usually divests the district court of jurisdiction over the matters appealed." Id. at 734. Nevertheless, we refused to apply this judge-made doctrine because deciding that the district court lacked jurisdiction "would 'induce needless paper shuffling.' " Id. As in Kern Oil, a remand of the Fergusons' appeal to the district court would result in "needless paper shuffling"; we refuse to indulge in such a pointless exercise.[2]
 
 IV.
 
 18
 In addition to the commerce element, the Fergusons must establish the following in order to prevail on their section 1 claims: (1) a contract, combination, or conspiracy (2) between two or more separate persons or entities (3) which has an unreasonable restraint on trade activities. See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 632-33 (9th Cir.1987).
 
 A.
 
 19
 In Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984), the Supreme Court held that in order to establish a claim of a conspiracy in restraint of trade a plaintiff must provide "evidence that tends to exclude the possibility" that the defendants "were acting independently." According to Monsanto, "the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendants] 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.' " Id. (citation omitted); cf. Richards, 810 F.2d at 902.
 
 
 20
 In support of their motion for summary judgment, the defendants "offered understandable and legitimate business reasons for their conduct." Souza v. Estate of Bishop, 821 F.2d 1332, 1335 (9th Cir.1987). ISU presented evidence of facially valid institutional and business reasons for its decision to limit the spring trade shows to one per year. ISU apparently determined that it was preferable to limit the trade shows to one each spring both from a revenue generating standpoint and in the interest of maintaining a more diversified program at the Minidome. Chamber and Journal presented evidence that they took no part in ISU's decision-making process and that they were willing to accept a contract that merely ensured that they would have the first trade show every other year. The defendants therefore met their "burden by proffering a 'plausible and justifiable' alternative interpretation of [their] conduct that rebuts the plaintiff[s'] allegation of conspiracy." T.W. Electrical Service, 809 F.2d at 632 (citations omitted); see also Souza, 821 F.2d at 1335; Richards, 810 F.2d at 902.
 
 
 21
 The Fergusons therefore were required to provide evidence of "specific facts" that undercut the defendants' responses. T.W. Electrical Service, 809 F.2d at 631, 632. This they failed to do: They have presented no probative evidence of any illegal concerted activity. In particular, the Fergusons did not offer any evidence that rebuts the defendants' evidence (1) that ISU unilaterally made a legitimate business decision to hold one spring trade show in the Minidome and to put out bids for the right to produce that show; (2) that ISU drafted bid specifications without input from any outside parties; (3) that the bidding procedures were fair and entirely anonymous; (4) that the renewable term of the lease was a standard clause in ISU contracts of this type, and (5) that there was no prior agreement to reject the Fergusons' bid.
 
 
 22
 Applying the rule of Monsanto, we therefore hold that, based on the record before the district court, the defendants' actions were completely independent and cannot amount to a conspiracy in restraint of trade.
 
 B.
 
 23
 Recognizing the lack of sufficient probative evidence of a conspiracy between the defendants, the Fergusons contend that the lease between ISU and Chamber and Journal is itself a "contract" which violates section 1 even if there was no "conspiracy" to eliminate competition. The district court did not specifically rule on this issue; however, it did hold that the Fergusons failed to establish a genuine question of material fact on whether the six-year exclusive lease between ISU and Chamber and Journal constituted an unreasonable restraint of trade. In order to survive a summary judgment motion on their "contract" claim, the Fergusons had to establish genuine questions of material fact on whether the lease between ISU and Chamber and Journal (1) constituted an unreasonable restraint of trade, and (2) caused injury to competition in the relevant market. See, e.g., Reid Bros. Logging Co. v. Ketchikan Pulp Co., 699 F.2d 1292, 1296 (9th Cir.), cert. denied, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 259 (1983).[3] We hold that they have failed to establish the presence of either question.
 
 
 24
 The Fergusons--and all other interested producers of spring trade shows in the area--had an equal opportunity to bid on the lease for the 1984-1989 spring trade shows. Such an opportunity for free competition shall presumably arise again at the end of the six-year lease. ISU's decision to limit the spring season to one show therefore did not foreclose competition in the market in which the Fergusons compete. The Fergusons have presented no evidence that ISU would not have given the lease to them--or any other qualified competitor of Chamber and Journal--if they had been the highest bidder. As it turned out, the Fergusons' bid was only half as large as that of the second highest bidder, Craig Ellis, and less than one-third of the prevailing bid of Chamber and Journal. The Fergusons therefore provided insufficient evidence of the lease's unreasonableness.
 
 
 25
 Secondly, while the exclusive nature of the lease does preclude the Fergusons from producing a spring trade show in the Minidome, " 'injury to the antitrust plaintiff alone is not sufficient to prove injury to competition.' In the absence of evidence of injury to competition, [the Fergusons'] claim ... would not survive a motion for summary judgment." T.W. Electrical Service, 809 F.2d at 635 (citations omitted). The Fergusons have failed to present such evidence. Nor have they presented any evidence that ISU's lease harms consumers of the trade shows. See 1 P. Areeda & D. Turner, Antitrust Law paragraphs 103-13 (1980).
 
 
 26
 ISU presented evidence that it did not destroy competition for the spring trade show; it merely forced the competitors to bid against one another for the one show ISU was willing to house. Such competition, we presume, will take place at six-year intervals. We find nothing inherently unreasonable about such a restraint on the competition for the spring trade shows.
 
 V.
 
 27
 The Fergusons primary contention on appeal is that ISU could not limit use of its "essential facility" (the Minidome) to one springtime show per year without running afoul of the Sherman Act. The "essential facilities" doctrine imposes on the owner of a facility that cannot reasonably be duplicated and which is essential to competition in a given market a duty to make that facility available to its competitors on a nondiscriminatory basis. Fishman v. Estate of Wirtz, 807 F.2d 520, 539-41 (7th Cir.1986); see Interface Group, Inc. v. Massachusetts Port Authority, 816 F.2d 9, 12 (1st Cir.1987). In order to prevail on such a claim, the plaintiffs must establish (1) that the defendant is a monopolist in control of the essential facility, (2) that competitors of the monopolist are unable to duplicate the facility, (3) that the monopolist has refused to provide the competitors access to the facility, and (4) that it is feasible for the monopolist to do so. MCI Communications v. AT & T, 708 F.2d 1081, 1132-33 (7th Cir.), cert. denied, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). See generally Hecht v. Pro-Football, Inc., 570 F.2d 982, 992-93 (D.C.Cir.1977), cert. denied, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978); Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1519-21 (10th Cir.1984), aff'd on other grounds, 472 U.S. 585, 600-02 & n. 27, 105 S.Ct. 2847, 2856-57 & n. 27, 86 L.Ed.2d 467 (1985).
 
 
 28
 As applied to the facts of this case, the Fergusons claim is without merit. First, the Fergusons appear to be arguing that, in leasing the Minidome to Chamber and Journal for an exclusive six-year term, ISU has refused to deal with them. But even assuming that ISU is a monopolist and that its Minidome is an essential facility, the Fergusons are not in competition with ISU. Thus, ISU has not refused to deal with a competitor.
 
 
 29
 [The Fergusons'] view of the essential facilities doctrine ... considerably overstates its scope. The doctrine aims to prevent a firm with monopoly power from extending that market power.... [I]t is difficult to see how denying a facility to one who, like [the Fergusons], is not an actual or potential competitor [of ISU] could enhance or reinforce [ISU's] power. See P. Areeda & H. Hovenkamp, Antitrust Law paragraphs 736.2d, 736.2e (Supp.1986). If this is so in the case of a private monopolist, it is still more certain when the monopolist is a public agency [like ISU], for the agency has neither the motive nor the need to solidify its monopoly position.
 
 
 30
 Interface Group, 816 F.2d at 12; cf. Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813, 822 (9th Cir.), cert. denied, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982) ("the sharing of an essential facility by two or more competitors accompanied by the exclusion of all other competitors may amount to a violation of the Sherman Act" (emphasis added)). Moreover, ISU has not refused to deal with anyone. It has merely refused to house more than one trade show per spring, and it has decided that that show will be given to the producer who makes the best bid. The Fergusons simply failed to outbid their competitors.
 
 
 31
 Second, the Fergusons presented insufficient evidence that (1) the Minidome, which is a state-owned facility, is the type of "essential facility" protected by the Sherman Act, (2) that the Fergusons were not able to produce reasonably comparable trade shows in the Minidome at another time of the year, and (3) that a competitor of ISU could not construct another, equally adequate, facility in the area. Cf. Fishman, 807 F.2d at 539-41; id. at 563-75 (Easterbrook, J., dissenting in part); Olympia Equip. Leasing Co. v. Western Union Telegraph Co., 797 F.2d 370, 376-80 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1574, 94 L.Ed.2d 765 (1987). See generally Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973); United States v. Terminal R.R. Assoc., 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810 (1912).
 
 
 32
 Third, the grant of an exclusive lease to one lessee does not constitute a illegal contract in restraint of trade merely because it excludes other lessees from the facility. The plaintiffs must additionally establish a conspiracy to restrain competition between the defendants. See United States v. Yellow Cab Co., 332 U.S. 218, 229, 67 S.Ct. 1560, 1566, 91 L.Ed. 2010 (1947) (exclusive lease contracts do not violate Sherman Act unless a conspiracy to obtain them is shown) (citing Donovan v. Pennsylvania Co., 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192 (1905)); Export Liquor Sales, Inc. v. Ammex Warehouse Co., 426 F.2d 251, 252-53 (6th Cir.1970) (same) (citing cases), cert. denied, 400 U.S. 1000, 91 S.Ct. 460, 27 L.Ed.2d 451 (1971); Parmelee Transp. Co. v. Keeshin, 292 F.2d 794, 803-04 (7th Cir.) (exclusive contract does not violate Sherman Act if it is obtained by competitive bids), cert. denied, 368 U.S. 944, 82 S.Ct. 376, 7 L.Ed.2d 340 (1961). As detailed above, see Part IV A, the Fergusons failed to establish a genuine question of fact regarding any conspiracy between the defendants.
 
 
 33
 Finally, even if the Fergusons could establish that they could not conduct their trade show in any facility other than ISU's Minidome, ISU was free to lease a portion of that location's available time to one entity and exclude others without violating the Sherman Act. Export Liquor, 426 F.2d at 252 (lessor who had control over a unique location essential to the conduct of a certain kind of business could nevertheless lease part of facility to single lessee); see Interface Group, 816 F.2d at 11-12; cf. Sakamoto v. Duty Free Shoppers, 613 F.Supp. 381, 388-91 (D.Guam 1983) (exclusive concession, open and fair bidding, reasonable as a matter of law), aff'd on other grounds, 764 F.2d 1285 (9th Cir.1985), cert. denied, 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986).[4]
 
 VI.
 
 34
 The Fergusons also failed to establish a cause of action under section 2 of the Sherman Act. The district court applied the appropriate tests for the Fergusons' monopolization and attempt to monopolize claims. See Drinkwine v. Federated Publications, Inc., 780 F.2d 735, 738-41 (9th Cir.1985), cert. denied, 475 U.S. 1087, 106 S.Ct. 1471, 89 L.Ed.2d 727 (1986). The Fergusons do not seriously question the district court's holdings on appeal. We therefore affirm the district court's grant of summary judgment on the Fergusons' section 2 claims.
 
 VII.
 
 35
 All of the issues involved were properly "taken from the jury" because "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." California Steel and Tube v. Kaiser Steel Corp., 650 F.2d 1001, 1004 (9th Cir.1981) (citation omitted). On the record before the district court, none of the defendants could be held to have violated either section 1 or section 2 of the Sherman Act. The Fergusons' claims make no economic sense, and speculative inferences from the jury can not help them. "In such an instance, the record on summary judgment must contain further persuasive evidence if it is to support the[ir] claim[s]." Richards, 810 F.2d at 902 (citing Matsushita Electric, 106 S.Ct. at 1356-57). Since the record does not contain such evidence, summary judgment was appropriate.[5] The district court's grant of summary judgment therefore is AFFIRMED.
 
 STEPHENS, District Judge, dissenting:
 
 36
 I dissent from the majority opinion on two grounds: because neither the district court nor the Court of Appeals have subject matter jurisdiction in this case. And, second, because the district court improvidently granted summary judgment despite an unresolved material issue of fact as to whether a nexus with interstate commerce existed.
 
 
 37
 These reasons are the result of the lack of any consideration by the district court of the need for a nexus with interstate commerce as the foundation for jurisdiction and as an element of the claim itself.
 
 
 38
 This means that the commerce element of a Sherman Act claim as identified in the first paragraph of part III of the majority opinion is lacking. It is similarly dispositive of the issue of subject matter jurisdiction which briefly stated requires that the dispute be in or affect interstate commerce since the right of Congress to legislate in this field depends upon the commerce clause of the Constitution. This case came from the district court in the form of a summary judgment. The facts were presented to the trial court by affidavit. On this record which is before us, there is no indication that the alleged violations of the Sherman Act by the defendants were in or had any affect on interstate commerce.
 
 
 39
 The district judge issued a Memorandum Decision which pointed out that the suit was for damages and injunctive relief under sections 1 and 2 of the Sherman Act. It contained a statement of undisputed facts in substantial detail and recognized that summary judgment may be granted only where the movant is entitled to judgment as a matter of law and where there is no genuine dispute as to any material fact. The decision acknowledges that summary judgment must be used sparingly in antitrust cases where motive and interest play a key role, citing Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 680 (9th Cir.1985). Without one word concerning the need for a showing of a nexus with interstate commerce, summary judgment issued.
 
 
 40
 Every court of limited jurisdiction has one first and inescapable duty. This duty is without exception. The court must satisfy itself that it has jurisdiction over the cause before it. The court can not escape this duty on the grounds that the parties did not raise the issue, that the parties stipulated that the court has jurisdiction, or that the defendant failed to deny the plaintiff's averments that the court has jurisdiction. The jurisdictional issue must be adjudicated. At this point in the judicial process we have little concern about the averments of the complaint. The averments of the complaint are of no assistance in a summary judgment proceeding which requires affidavits of witnesses, affidavits which are only available to the court of appeals if they are in the record on appeal.
 
 
 41
 The Supreme Court recently addressed this subject in Bender v. Williamsport School Dist., 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) as follows:
 
 
 42
 Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. See, e.g., Marbury v. Madison, 1 Cranch 137, 173-180 [2 L.Ed. 60] (1803). For that reason, every federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it. Mitchell v. Maurer, 293 U.S. 237, 244 [55 S.Ct. 162, 165, 79 L.Ed. 338] (1934). See Juidice v. Vail, 430 U.S. 327, 331-332 [97 S.Ct. 1211, 1215-16, 51 L.Ed.2d 376] (1977) (standing). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263 (1936) (footnotes omitted).
 
 
 43
 Id. at 541, 106 S.Ct. at 1331 (footnote omitted).
 
 
 44
 Although the focus in Bender is on standing, the basic issue is jurisdiction. The Court continues:
 
 
 45
 Mr. Youngman's status as an aggrieved parent, however, like any other kindred fact showing the existence of a justiciable "case" or "controversy" under Article III, must affirmatively appear in the record. As the first Justice Harlan observed, "the presumption ... is that the court below was without jurisdiction" unless "the contrary appears affirmatively from the record." King Bridge Co. v. Otoe County, 120 U.S. 225, 226 [7 S.Ct. 552, 552, 30 L.Ed. 623] (1887). Accord, Thomas v. Board of Trustees, 195 U.S. 207, 210 [25 S.Ct. 24, 25, 49 L.Ed.2d 160] (1904); Minnesota v. Northern Securities Co., 194 U.S. 48, 62-63 [24 S.Ct. 598, 601, 48 L.Ed. 870] (1904). That lack of standing was not noticed by either party matters not, for as we said in Mansfield C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 [4 S.Ct. 510, 511, 28 L.Ed. 462] (1884):
 
 
 46
 "[T]he rule, springing from the nature and limits of the judicial power of the United States, is inflexible and without exception, which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."
 
 
 47
 Accord, Chicago, B. & Q.R. Co. v. Willard, 220 U.S. 413, 419 [31 S.Ct. 460, 462, 55 L.Ed. 521] (1911); Kentucky v. Powers, 201 U.S. 1, 35-36 [26 S.Ct. 387, 308, 50 L.Ed. 633] (1906); Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 [20 S.Ct. 690, 691, 44 L.Ed. 842] (1900). See Thomson v. Gaskill, 315 U.S. 442, 446 [62 S.Ct. 673, 675, 86 L.Ed. 951] (1942). Moreover, because it is not "sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings," Grace v. American Central Ins. Co., 109 U.S. 278, 284 [3 S.Ct. 207, 210, 27 L.Ed. 932] (1883); Thomas v. Board of Trustees, 195 U.S., at 210 [25 S.Ct. at 25], it follows that the necessary factual predicate may not be gleaned from the briefs and arguments themselves. This "first principle of federal jurisdiction" applies "whether the case is at the trial stage or the appellate stage." P. Bator, P. Mishkin, D. Shapiro, & H Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 835-836 (2d ed. 1973).
 
 
 48
 Id. at 546-47, 106 S.Ct. at 1333-34 (footnote omitted).
 
 
 49
 The Bender opinion concludes on page 549, 106 S.Ct. at 1335:
 
 
 50
 We therefore hold that because the Court of Appeals was without jurisdiction to hear the appeal, it was without authority to decide the merits. Accordingly, the judgment of the Court of Appeals is vacated, and the case is remanded with instructions to dismiss the appeal for want of jurisdiction.
 
 
 51
 The Ninth Circuit is up to date as of March 22, 1988 when it decided Latch v. United States, 842 F.2d 1031 (9th Cir.1988), holding:
 
 
 52
 The issue of subject matter jurisdiction presents a legal question, which we review de novo. Peter Starr Production Co. v. Twin Continental Films, Inc., 783 F.2d 1440, 1442 (9th Cir.1986). Furthermore, "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review,' even though the parties are prepared to concede it." Bender v. Williamsport Area School District, 475 U.S. 534, 541 [106 S.Ct. 1326, 1331, 89 L.Ed.2d 501] (1986) (quoting Mitchell v. Maurer, 293 U.S. 237, 244 [55 S.Ct. 162, 165, 79 L.Ed. 338] (1934)).
 
 
 53
 As a general rule, if a district court has wrongfully exercised subject matter jurisdiction over a dispute, the appellate court must vacate the district court's decision, including any award of attorney's fees.
 
 
 54
 Latch v. United States, at 1033.
 
 
 55
 In some cases where the issue of jurisdiction is in doubt, the facts needed to establish subject matter jurisdiction are intertwined with the substantive facts in such a way that the most direct and economical way to proceed may be to proceed with trial until the jurisdictional facts can be sorted out. In doing so, the trial court is viewing the issue prospectively, looking forward as the facts unfold, not knowing the answer to the jurisdictional issue until the facts accumulate in the record. Even in the process of considering summary judgment, the trial court has the power to call for affidavits germane to jurisdiction. On the other hand, the court of appeals has an entirely different role. The record on appeal is presented for review of what has already transpired. It is complete as filed. The court of appeals has no means to add testimony by affidavit or otherwise. If it appears from this record that the trial court did not have subject matter jurisdiction, the court of appeals must correct the trial court's error of proceeding to judgment.
 
 
 56
 The court of appeals has no reason whatsoever for deferring this jurisdictional issue and no way to escape deciding it. No case cited by the majority as precedent holds to the contrary.[1] The trial court has options, but the court of appeals has none save to vacate the trial court decision and return the case to the trial court. In this case the trial court did not consider the relationship between the plaintiff's claims and interstate commerce, but granted summary judgment, disposing of the case by noting an absence of substantive merit. The majority on the appellate court follows the same course, bypassing the question of jurisdiction and the commerce element of the claim to examine the "conspiracy and contract claims." In the majority opinion, the relationship between the plaintiff's claim and interstate commerce is never resolved.
 
 
 57
 I oppose this decision because it is against the law as articulated in 1986 by the Supreme Court in Bender and by the Ninth Circuit in Latch in March of this year. As a Ninth Circuit precedent it will invite argument that Sherman Act civil cases do not require proof of a nexus with interstate commerce. We have in the majority opinion a ruling which ignores the need to establish a nexus between the claimed wrong and interstate commerce in a Sherman Act case both as an element of the claimed wrong and as a key to establishing or rejecting subject matter jurisdiction.
 
 
 58
 The facts necessary to establish jurisdiction and the commerce element necessary to state a claim under the Sherman Act for monetary damages or for injunctive relief are the same. From the point of view of stating and proving a claim, the commerce element is on the same level as any other element of a claim. Failure to establish a nexus with interstate commerce is sufficient to defeat the claim. On the otherhand, from the point of view of jurisdiction of Sherman Act claims, when the facts presented in the trial court do not establish a nexus with interstate commerce, the federal courts are without authority to decide the merits, and the Court of Appeals has jurisdiction on appeal, not on the merits but merely for the purposes of correcting the error of the trial court in entertaining the suit.
 
 
 59
 In this case the trial court failed its special obligation to satisfy itself of its own jurisdiction and the same may be said of the Court of Appeals. In my opinion the district court produced a void judgment which is approved by the majority opinion.[2] The appeal should be dismissed for want of jurisdiction and the district court judgment should be vacated.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Assuming that the Fergusons' complaint improperly alleged interstate commerce, we should not dismiss this case "for lack of jurisdiction without giving the plaintiff an opportunity to be heard unless it is clear the deficiency cannot be overcome by amendment." May Dept. Store v. Graphic Process Co., 637 F.2d 1211, 1216 (9th Cir.1980) (citation omitted); see Timberlane Lumber Co. v. Bank of America Nat'l Trust & Sav. Ass'n, 549 F.2d 597, 602 (9th Cir.1977). The record shows that the Fergusons welcomed exhibitors and products from out of state, which were discouraged by Chamber. Although sparse, these indications of interstate commerce are not so deficient and clearly incurable as to warrant sua sponte dismissal for lack of subject matter jurisdiction at this stage of the proceedings. We reach this conclusion in the context of the minimal showing demanded of the Fergusons. The scope of the Sherman Act is coextensive with the breadth of Congress' power to legislate; the Fergusons meet their burden if they can satisfy the very generous "affecting interstate commerce" standard
 We also decline to remand to the district court for further proceedings on jurisdiction. Such a remand would be an exercise in futility because we hold that the Fergusons' complaint should be dismissed for failure to state a claim upon which relief can be granted. See Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730, 734 (9th Cir.1988).
 
 
 [2]
 It is relatively common for courts to render decisions on the merits in antitrust cases notwithstanding uncertain jurisdiction. See generally, e.g., McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 245-47, 100 S.Ct. 502, 510-11, 62 L.Ed.2d 441 (1980); Ronwin v. State Bar, 686 F.2d 692, 698-99 (9th Cir.1981) (explicitly stating that the plaintiff had failed to establish jurisdiction but addressing other grounds), rev'd, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (decision on merits); Timberlane, 549 F.2d at 602-03 (defense attacking commerce allegations is not jurisdictional, but on merits)
 
 
 [3]
 We agree with the Fergusons that the "rule of reason" analysis applies to the facts of this case and that they need not show specific intent under section 1. See Cascade Cabinet Co. v. Western Cabinet & Millwork Inc., 710 F.2d 1366, 1370-73 (9th Cir.1983); United States v. Champion Internat'l Corp., 557 F.2d 1270, 1274 (9th Cir.1977), cert. denied, 434 U.S. 938, 98 S.Ct. 429, 54 L.Ed.2d 298 (1977)
 
 
 [4]
 See also BusTop Shelters, Inc. v. Convenience & Safety Corp., 521 F.Supp. 989, 997 (S.D.N.Y.1981) ("Ironically, one of the principal acts [the plaintiff] complains of was the opening of the bidding on the franchise and the receipt of competing bids. It is hard to see how that conduct can be called anticompetitive."); Murdock v. City of Jacksonville, Florida, 361 F.Supp. 1083, 1088-89 (M.D.Fla.1973) (exclusive lease, open bidding, no Sherman Act violation)
 
 
 [5]
 Because we hold that plaintiffs have failed to present any material issue of fact on the merits of their antitrust claims against all defendants, we do not address whether any of the defendants were entitled to summary judgment under the eleventh amendment to the United States Constitution, the Noerr-Pennington doctrine, or Parker "state action" immunity. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (in private suits against state or its agencies, eleventh amendment bars recovery from state treasury); Eastern R.R. Presidents' Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (concerted efforts to influence government do not violate antitrust laws); United Mine Workers of Am. v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (same); Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (anticompetitive actions taken pursuant to program administered in detail by state are immune from antitrust laws)
 
 
 [1]
 None of the cases that the majority opinion cites decided that a panel of the court of appeals may proceed to a decision on the merits after noting lack of subject matter jurisdiction. Bender has overruled all previously decided cases to the extent of any conflict existed, and all subsequently decided court of appeals cases in conflict with Bender are against the law as articulated by the Supreme Court and are not valid precedents. Cases containing appellate observations as to what are proper district court procedures to resolve jurisdictional problems in complicated cases do not constitute precedent as to what is appropriate procedure in the court of appeals
 Two Ninth Circuit cases that the majority cites, Kern Oil & Ref. Co. v. Tenneco Oil Co., 840 F.2d 730, 734 (9th Cir.1988), and Kerr Center Parents Ass'n v. Charles, 842 F.2d 1052 (9th Cir.1988), have been decided since Bender. To the extent they are viewed as applicable to this situation, they can not undercut the authoritative value of Bender. This has been recognized within the Ninth Circuit since both cases were decided before this circuit decided Latch. Moreover, neither Kerr Center nor Kern Oil involved the issue of subject matter jurisdiction. Kerr Center involved state immunity under the eleventh amendment, a defense which is not a jurisdictional bar. Kern Oil involved the district court's loss of jurisdiction upon the filing of the notice of appeal. The court noted that the doctrine was a judicial creation. 840 F.2d at 734. As I have heretofore noted, the need to establish a nexus with interstate commerce is a constitutional necessity.
 It is also important to note that the majority's reliance on McLain v. Real Estate Bd. of New Orleans, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), is misplaced. In McLain the Court articulated a very specific standard for determining the sufficiency of the nexus to interstate commerce in Sherman Act cases at different stages of the proceedings:
 [J]urisdiction may not be invoked under [the Sherman Act] unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce. To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.
 444 U.S. at 242, 100 S.Ct. at 509.
 Moreover, under McLain, the Fergusons had the burden of "demonstrat[ing] a substantial effect on interstate commerce." Id. See also Turf Paradise Inc. v. Arizona Downs, 670 F.2d 813, 818-19 (9th Cir.1982). In McLain the Court allowed the plaintiffs-petitioners to proceed to trial only because they had met the strict requirements of the McLain test.
 
 
 [2]
 Dismissing the appeal for lack of subject matter jurisdiction would not be "an exercise in futility." The Fergusons would then lose only the right to rely on the Sherman Act. The Idaho courts remain open to them to pursue their claims under the anti-trust statutes of Idaho. For this reason the majority decision on the substantive issues is highly prejudicial to the Fergusons who might present a very different case in the state courts if allowed to proceed to trial